

# THE ATTORNEY GENERAL
# OF TEXAS

**GROVER SELLERS**
~~XXXXXXXXXXXXXXXXXX~~
ATTORNEY GENERAL

AUSTIN 11, TEXAS

Honorable L. A. Woods
State Superintendent of Public Instruction
Austin, Texas

Dear Sir:

Opinion No. O-6262
Re: Authority of State Board of Education to change any textbook adopted for any grade to any other grade from time to time. Also related question.

Your communication to this department, dated November 2, 1944, reads in part as follows:

"Article 2851 of the Revised Civil Statutes provides, in part, that - Textbook contracts and bonds shall be prepared by the Attorney General. The Attorney General's Department, some years ago prepared the contract form which the State Board of Education has been using to contract with textbook companies on regularly adopted textbooks.

"At recent meetings of the State Board of Education two resolutions were passed, copies of which are attached hereto.

"The State Board of Education has ordered these two resolutions to be included as part of the contractual agreement between the textbook company and the State Board of Education.

"Since it is the duty of the Attorney General to prepare the contract forms, is it permissible for the State Board of Education to make the above mentioned resolutions a part of the contractual agreement?

"One resolution provides that "Any textbook adopted for any grade may be changed to any other grade from time to time by the State Board of Education, and be subject to and in accordance with the rules as prescribed by the State Board of Education from time to time.'

"It appears that this resolution may be in conflict with Article 2860 of the Revised Civil Statutes.

"I would like to know whether the State Board of Education has the authority to adopt a textbook for one grade, and then, by Board order, during the life of the contract, designate that the book shall be used in some grade other than the one for which it was adopted?"

We shall answer your questions in the order submitted.

Article 2851, Vernon's Annotated Civil Statutes, provides, among other things, that the text-book contracts and bonds in connection therewith "shall be prepared by the Attorney General." The forms for such contracts and bonds have heretofore been prepared by this department. Such forms have heretofore been used by the State Board of Education for the purposes intended. The purpose of this provision, in our opinion, was to make sure that such contracts and bonds conformed to the statutory requirements. As long as no provisions therein conflict with such requirements, we know of no reason why approval should not begiven by this department, regardless of by whom such provisions were inserted. It is to be noted that at the end of each contract and bond appear the printed words "APPROVED AS TO FORM:" Underneath said words is a line for signature. Underneath said line are the printed words "Assistant Attorney General." Thus, the construction of said provision by this department attaches to the legality of form rather than to preparation. The legality of such contracts is not based upon who prepared same. Their legality is based upon their contents and conformity to the statutes. Should such contracts contain provisions repugnant to and in conflict with statutory requirements, same should not receive the approval of this department. It follows, therefore, that any proposed changes in the contract forms heretofore prepared by this department should first be submitted to us for an opinion as to their legality. By such procedure, the likelihood of illegal provisions and resulting delays can be avoided.

The resolution and stipulation in cluded in each contract regarding the manufacturing specifications and standards for free textbooks do not conflict with any statutory provisions. It is therefore our opinion that same are legal and will receive our approval.

It is the further opinion of this department that the resolution and stipulation included in each contract, regarding the change of any textbook adopted for any grade to any other grade from time to time by the State Board of Education,

is in conflict with certain statutory provisions. It is there-
fore our opinion that same are illegal and cannot receive our
approval.

"All persons are presumed to know the law and
to have contracted with reference to it. The laws
which subsist at the time and place of the making
of a contract and where it is to be performed enter
into and form a part of it, as if they were ex-
pressly referred to or incorporated in its terms;
and the contract must be construed with reference
to them." 10 Tex. Jur., pp. 316-317, par. 182.

At an election held on November 6, 1928, Section 8 of
Article 7 of our Constitution was amended to read as follows:

"The Legislature shall provide by law for a State
Board of Education, whose members shall be appointed
or elected in such manner and by such authority and
shall serve for such terms as the Legislature shall
prescribe not to exceed six years. The said board
shall perform such duties as may be prescribed by
law." (Emphasis ours.)

Thereafter, by Acts of 1929, 41st Legislature, 2nd C.S.,
p. 12, Ch. 10, the present State Board of Education was created,
with certain powers and duties prescribed. Said Chapter 10
is listed in Vernon's as Arts. 2675b-1 to 2675b-10 , both in-
clusive. Certain powers and duties of said Board are listed
under Art. 2675b-5. Subdivision (e) thereof reads as follows:

"The State Textbook Commission shall no longer
meet or function after the taking effect of this Act
(Arts. 2675b-1 to 2675b-10, supra), and the duties
heretofore devolving by law upon the State Textbook
Commission shall be performed by the State Board of
Education, created in this Act (Arts. 2675b-1 to
2675b-10, supra), and the State Board of Education,
hereby created shall for the purpose of disposing
of textbook matters meet at times and places that
the State Textbook Commission is required to meet
and act under existing law." (Emphasis ours)

Section (f) of said Art. 2675b-5 reads in part as fol-
lows:

"Said Board of Education shall appoint a Text-
book Committee to be composed of five members, each
of whom shall be an experienced and active educator
engaged in teaching, in the public schools of Texas,

and it shall be the duty of said Textbook Committee, to examine the books submitted for adoption and make their recommendations in writing to said State Board of Education relative to the teachable value of the books submitted respectively. The Textbook Committee, provided for herein, shall hold their meetings when and where said State Board of Education shall determine . . . . . ." (Emphasis ours.)

Art. 2843, V.A.C.S., provides in part as follows:

"The Textbook Commission (whose duties have been transferred by Art. 2675b-5, supra, to the State Board of Education) . . . . shall have authority to select and adopt a uniform system of textbooks to be used in the public free schools of Texas, and the books so selected and adopted shall be printed in the English language, and shall include and be limited to textbooks on the following subjects: . . . .

"Said Textbook Commission shall also adopt a multiple list of books for use in the high schools of the State, said multiple list including not fewer than three (3) nor more than five (5) textbooks on the following subjects:. . . . and for each high school branch of study any one of several of the textbooks of said multiple list adopted for the subject may be selected; provided, however, that the several textbooks do not exceed the allowable number equivalent to one textbook for and used in any high school as the textbook or in such a branch in that high school, but when such book or books is or are so chosen by local authorities from the multiple list adopted such book or books shall be continued in that high school for the entire five (5) years of the adoption period. Provided, however, that the multiple list herein provided for shall apply to all high schools classed by the Department of Education as high schools of the first class. For use in all other high schools a uniform system of textbooks on each subject mentioned above shall be selected by the commission; provided, that in any city or independent school district having more than one high school of the first class said city or independent school district shall adopt from asid multiple list for use in each of said high schools the same books and shall use said books so adopted for a period of not less than five (5) years.

"Specific rules as to the manner of the se-
lection of books by the high school shall be made
by the State Textbook Commission.

"The commission, as herein provided for, shall
adopt textbooks in accordance with the provisions
of this Act for every public free school in this
State and no public free school in this State shall
use any textbook unless same has been previously
adopted and approved by this commission; and the
commission shall prescribe rules under which all
textbooks adopted and approved shall be introduced
or used by or in the public schools of the State."
(Emphasis ours.)

While said Art. 2843 has been amended in 1941 by the
47th Leg., p. 1388, Ch. 627, the last above quoted paragraph
was brought forward in said amendment exactly as it appeared
in the original act passed by the 39th Legislature Acts of
1925, p. 417, Ch. 176, Section 5. Said Section is listed as
Art. 2843 of the 1925 Revised Statutes.

Section 22 of said Ch. 176 appears in the Revised Stat-
utes of 1925 as Art. 2860. This article was amended by Acts
of 1927, 40th Leg., p. 308, Ch. 213, par. 8. It is listed,
as amended, in Vernon's Ann. Civ. Stat. as Art. 2860, and
reads as follows:

"The books adopted by the commission under
the provisions of this Act shall be introduced and
used as textbooks to the exclusion of all others
in public free schools of this State for such per-
iod of years as may be determined by the commission
not to exceed six years in any case; provided the
right to the exclusive use of new books during the
first three years of the term of any contract shall
be waived by the contracting publishers to provide
for the gradual introduction of new books; and pro-
vided further that nothing in this Act shall be
construed to prevent or prohibit the trustees of
school districts from purchasing textbooks with the
local maintenance funds and furnishing free text-
books to the students in the event that no con-
tracts are made by the State. Acts 1927, 40th Leg-
islature, p. 308, Ch. 213, § 8."

The amendment only substituted "three" for "two" in the
clause "provided the right to the exclusive use of new books
during the first two years," and "shall" for "may" and publish-
ers" for "parties" in the clause "may be waived by the con-
tracting parties." The final clause, "Said Commission shall

not contract for any book of which any member of the nominating committee, or any member of said commission is or may be author," was also omitted in said amendment.

It will thus be seen that the amendments to both Arts. 2843 and 2860, R. C. S. 1925, did not change the meaning of either article in reference to the introduction and use of textbooks in the public free schools of Texas. In this connection, said articles are the same as originally enacted by the 39th Legislature in 1925, p. 417, Ch. 176, Sections 5 and 22. Art. 2843 empowers the commission (now State Board of Education) to "prescribe rules under which all textbooks adopted and approved shall be introduced or used by or in the public schools of the State." Art. 2860 provides that "The books adopted . . . under the provisions of this Act shall be used as textbooks to the exclusion of all others in public free schools of this State for such period of years as may be determined by the commission (now State Board of Education), but not to exceed six years in any case." If, therefore, there is any conflict in these two provisions, the one quoted from Art. 2860 must control. "Where irreconcilably conflicting acts are passed at the same time, or where parts or sections of the same act are in irreconcilable conflict, the act or provision later in position prevails as the latest expression of the legislative will, and repeals the other in so far as there is irreconcilable conflict." 39 Tex. Jur. pp. 139-140, par. 74.

It is our opinion, however, that no such conflict exists. In the case of American Book Co., v. Marrs, Superintendent, (Tex. Sup.) 253 S.W. 817, it was held that the State Board of Education had the following exclusive powers regarding free textbooks: (1) to ascertain the number of books needed; (2) to determine the amount and set aside from the available school fund the necessary funds for the purchase of same; (3) and to determine who are contractors with the State. Also, that it is the duty of said Board to purchase and distribute free textbooks under the management of the Superintendent of Public Instruction. Said case is referred to and followed in the Supreme Court case of Charles Scribner's Sons v. Marrs, Superintendent, in 262 S.W. 722, which is most instructive concerning the history of free textbooks in our State. The two cases just referred to were rendered in 1923 and 1924 respectively. The State Textbook Commission was thereafter created and empowered with the performance of certain duties. Acts of 1925, 39th Leg., p. 417, Ch. 176. However, by Acts of 1929, 41st Leg., 2nd C.S., p. 12, Ch. 10, par. 5 (Art. 2675b-5, V.A.C.S.), said duties were transferred to the State Board of Education. Under our present Constitution and statutes, the exclusive powers of said State Board regarding free textbooks

are the same as listed in the American Book Co. case, supra.
We find no authority, either expressed or implied, whereby
any textbook adopted for any grade may be changed to any other
grade from time to time by the State Board of Education. Such
procedure would be in direct violation of the exclusion pro-
vision contained in Art. 2860, supra. It would also conflict
with paragraph 8 of the textbook contract form prepared by
this department, which is based on said Art. 2860, and reads
as follows:

"The textbooks covered by this contract will be
introduced and used gradually in the public free
schools of Texas during the first three years of the
term of the contract, the details to be determined
by the State Superintendent of Public Instruction
subject to the approval of the State Board of Educa-
tion. During the remaining years of the contract
period, said _____will be used in all
public free schools of the State of Texas to the
exclusion of all others of the same grade and on the
same subject."

Said paragraph just quoted is also in furtherance of
the provisions of Art. 2870, R.C.S., 1925, which reads as fol-
lows:

"The purchase and distribution of free text-
books for the State shall be under the manage-
ment of the State Superintendent of Public Instruc-
tion, subject to the approval of the State Board
of Education."

Article 2844, V.A.C.A., provides for adoption of sup-
plementary readers for the first seven grades and such other
supplementary books for use in said elementary grades. Such
supplementary books shall only be used to supplement the
basal book on reading. "In no case shall supplemental books
be adopted for other subjects."

Sections 1 of Art. 2911a, V.A.C.S., provides for the
designation of certain grades or sections of grades in elemen-
tary schools in which the Spanish language may be taught.
Section 2 of said article provides for the purchase and dis-
tribution of textbooks for such instruction in such grades or
sections of grades so designated.

Except as hereinabove stated, we have found no statutes
which specify that textbooks in any subject shall be adopted
for a particular grade or grades. It appears therefore that
such books are provided on the basis of subjects and not on

the basis of grades.

Art. 2656, V.A.C.S., charges the State Superintendent
with the administration of the school laws and a general su-
perintendency of the business relating to the public schools
of Texas.

Art. 2657, V.A.C.S., requires the State Superintendent
to "advise and counsel with the school officers of the
counties, cities and towns and school districts as to the
best methods of conducting the public schools." He is also
empowered thereby to issue instructions and regulations bind-
ing for observance on all officers and teachers in all cases
wherein the provisions of the school law may require interpre-
tation - - - , also in cases that may arise in which the law
has no provision, and where necessity requires some rule in
order that there may be no hardships - - -, and no delays or
inconvenience in the management of school affairs." (Emphasis
ours.)

It is clear, therefore, that in all instances not other-
wise provided by statute, the grade levels for instruction in
required or permitted subjects must be determined and fixed by
the State Superintendent of Public Instruction. When such
grade levels are thus established, it is the duty of the State
Board of Education to adopt textbooks in said subjects based
on the teachable value of said books for said grade levels.
Section (f) of Art. 2675b-5, supra. After said textbooks have
been so adopted in conformity with our statutes, same shall
be introduced and used as such to the exclusion of all others
on said subjects in their respective grade levels. They are
to be thus used for such period of years as may be determined
by the State Board of Education, not to exceed six years in
any case. Art. 2860, supra. Books chosen from the multiple
list of books adopted for use in the high schools of Texas,
shall be continued in the respective high schools in which
said books are chosen for not less than five years of the adop-
tion period. Art. 2843, V.A.C.S.

It therefore is the opinion of this department that
your last question submitted must be answered in the negative.

Very truly yours,

ATTORNEY GENERAL OF TEXAS


By s/L. H. Flewellen
L. H. Flewellen

LHF:iw:wc

APPROVED DEC. 5, 1944
s/Grover Sellers
ATTORNEY GENERAL OF TEXAS

Approved Opinion Committee By s/CFG Chairman